751 P.2d 701

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Cloyd Norman HALL, Jr.,
Defendant–Appellant.**

No. 9766.

Court of Appeals of New Mexico.

Dec. 1, 1987.

Certiorari Denied Feb. 29, 1988.

18

Jacquelyn Robins, Chief Public Defender, Stephen D. Aarons, Asst. Public Defender, Santa Fe, for defendant-appellant.

Hal Stratton, Atty. Gen., Patricia Frieder, Bill Primm, Asst. Attys. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

FRUMAN, Judge.

Defendant appeals his conviction for second degree murder. The issues raised on appeal are addressed in the sequence presented by defendant. The issues raised in defendant's docketing statement, but not briefed, are deemed abandoned. *State v. Romero*, 103 N.M. 532, 710 P.2d 99 (Ct. App.1985). We affirm.

In March 1986, defendant was stopped on Interstate 40 in Quay County by New Mexico State Police Officer Sherman Toler (Toler). Defendant's car was loaded with personal possessions because he was moving from California to Missouri; he was accompanied by his common-law wife. Toler issued a warning ticket for speeding and proceeded to search the car. Although the circumstances are in dispute, it is clear that a fight developed, and Toler was fatally injured. Defendant turned himself in to authorities and was charged with first-degree murder, contrary to NMSA 1978, Section 30-2-1 (Repl.Pamp.1984).

After a jury trial in November 1986, the state filed a supplemental criminal information alleging that defendant had two prior felony convictions. Finding these allegations to be true and also finding aggravating circumstances "in that the defendant used excessive force and needless brutality," defendant was sentenced to a basic term of twelve years, together with a one-year enhancement pursuant to the jury find-

ing that defendant used a firearm in committing the offense, and a four-year enhancement pursuant to the habitual offender statute, for a total of seventeen years.

Defendant contends on appeal that late production of certain evidence, as well as non-disclosure of other evidence, denied defendant due process, a fair trial, and effective assistance of counsel. Defendant also contends that the prosecutor's exercise of peremptory challenges to exclude Hispanic venire members denied him equal protection, due process, a fair trial, and effective assistance of counsel. Defendant further contends that the admission of testimony concerning the circumstances of that conviction deprived him of due process and a fair trial. Finally, defendant contends that the trial court erred in enhancing his sentence for use of a firearm after having aggravated the basic sentence by the maximum amount. Defendant also argues the existence of cumulative error. For the reasons that follow, we hold that there has been no reversible error.

**A. Whether the prosecutor's nondisclosure of defendant's personal papers until several days prior to trial, in violation of specific orders to produce, denied him due process, a fair trial, and effective assistance of counsel.**

At the time of his arrest, defendant had numerous personal papers in his vehicle. Despite several attempts and court orders to have the prosecutor produce those papers, they were not returned to defendant until several days before trial. Defendant claims these papers were essential to help him identify and secure witnesses as to his good character and character for peacefulness, and because of the untimely production of his papers, defendant was not able to do so.

Defendant has cited *State v. Lovato*, 94 N.M. 780, 617 P.2d 169 (Ct.App.1980), in support of his argument that the prejudice resulting from the untimely production of his personal papers requires the reversal of his conviction. *Lovato* was distinguished

in *State v. Sandoval*, 99 N.M. 173, 655 P.2d 1017 (1982). In *State v. Sandoval*, the court held that to determine prejudice where the state initially deprives defendant of the evidence but later produces the evidence, the reviewing court should consider whether the failure to timely disclose the evidence was cured by the trial court. The *Sandoval* distinction applies in the instant case. Here, the evidence was not destroyed as was the situation in *Lovato*; rather, defendant's personal papers were delivered to his counsel shortly before trial. Thus, the decisive issue is whether the untimely production of defendant's papers was cured by the trial court. *State v. Sandoval*.

During voir dire, defendant moved for a continuance to make use of his personal papers. In denying the motion, the trial court stated that it would consider a several day recess if, during trial, good cause was presented by defendant. Defendant did not seek a recess during trial. We view this inaction as a cure of any prejudice that may have resulted from the untimely production. *See id.* We also view defendant's inaction as a waiver of any claim that the trial court abused its discretion in not granting a continuance. *Cf. State v. Johnson*, 91 N.M. 148, 571 P.2d 415 (Ct.App. 1977).

In his reply brief, defendant claims that he made sufficient offers of proof of the testimony of material witnesses he was unable to call at trial. However, this testimony related to the character of the victim rather than to defendant's character, and thus is not related to the production of defendant's personal papers. Secondly, defendant's reference to the complex procedural requirements of NMSA 1978, Section 31–8–2 (Repl.Pamp.1984) applies to summoning witnesses from this state to appear in another state and does not apply to the converse situation found here.

Furthermore, defendant claimed that he was deprived of a fair trial, in part, on the ground that the lack of access to this material precluded him from locating "the names, current addresses and telephone numbers of * * * good character witness-

es." The prejudice part of the test enunciated in *State v. Sandoval* requires the court to assess whether the omitted evidence created a reasonable doubt that otherwise did not exist. Defendant's claim did not create such a doubt, in the absence of evidence that particular witnesses as to character could not be located without access to the exhibit. Until defendant indicated with greater specificity what might have been proved, the trial court was not in a position to evaluate the relevance and import of the nonproduction. *Cf. State v. Quintana*, 86 N.M. 666, 526 P.2d 808 (Ct. App.1974) (holding that before a defendant could be prejudiced, the testimony of an omitted witness must be shown to be important and critical, not merely technical or cumulative).

**B. Whether the prosecutor's nonproduction of Officer Toler's daily logs until several weeks prior to trial, in violation of specific orders to produce, denied defendant due process, a fair trial, and effective assistance of counsel.**

Defendant sought to obtain Toler's daily logs to determine whether he could discover witnesses regarding Toler's character for violence during routine traffic stops. After several attempts and court orders to have the prosecutor produce these logs, they were delivered to defendant approximately three weeks prior to trial. Defendant asserts that this delay prevented him from securing the presence at trial of at least four out-of-state witnesses regarding Toler's character.

The record discloses the following. Approximately two weeks before trial, defendant filed his list of intended trial witnesses. The names and addresses of three of those four out-of-state witnesses were set forth on that list. One of these three witnesses was contacted by defendant approximately five months before trial. Defendant supplemented his witness list several days before trial. The supplement contained the name and address of the fourth witness. The trial court ordered payment of the expenses of all of defendant's witnesses several days prior to trial. A subpoena for

at least one of these character witnesses was issued by the court clerk two weeks before trial.

Prior to trial, defendant sought a continuance because of the late production of the daily logs. In denying the motion, the trial court stated that defendant had sufficient time to utilize the logs. Following trial, defendant sought a new trial, claiming an inability to secure the appearance of the out-of-state witnesses as to Toler's character because of the late production of the logs. Defendant does not assign error to the denial of his motion for continuance. Rather, defendant maintains he was prejudiced by the late production of the logs because he was therefore unable to obtain the presence of these character witnesses.

■■■ We observe that in seeking a continuance to secure the appearance of an absent witness, a party must show that it has used due diligence to obtain the witness' testimony. *See State v. Case*, 100 N.M. 714, 676 P.2d 241 (1984); *State v. Perez*, 95 N.M. 262, 620 P.2d 1287 (1980); *State v. Haddenham*, 93 N.M. 394, 600 P.2d 846 (Ct.App.1979). *See also* NMSA 1978, § 31–8–3 (Repl.Pamp.1984). Defendant did not make such a showing in requesting the continuance. Also, defendant has not claimed that he advised the trial court, during trial, either that his subpoenaed witnesses were unable or unwilling to appear or that a continuance would have enabled him to secure their appearance. Accordingly, defendant failed to preserve his claim of prejudice regarding the untimely disclosure of the daily logs. *See State v. Case. Cf. State v. Hoxsie*, 101 N.M. 7, 677 P.2d 620 (1984) (an assertion of prejudice is not equivalent to a showing of prejudice).

We recognize that under some circumstances no more prejudice need be shown than that a line of defense was frustrated by court order. *See State v. Orona*, 92 N.M. 450, 589 P.2d 1041 (1979). On these facts, however, we cannot conclude that the late production prevented defendant from obtaining witnesses as to the victim's character. Thus, we hold that defendant

has not demonstrated reversible error in this issue. *But cf. State v. Slayton,* 90 N.M. 447, 564 P.2d 1329 (Ct.App.1977).

**C. Whether the intentional nondisclosure by the prosecutor of a conversation between defendant and an escorting officer, in violation of trial court orders, denied defendant due process, a fair trial, and effective assistance of counsel.**

While being transported to court several days before trial, defendant discussed his training and experience in karate with his escorting officer. The officer reiterated this conversation to the prosecutor, who did not disclose the conversation to defendant's counsel. Questions relating to the context of this conversation were asked of defendant during his cross-examination at trial by the prosecutor. As defendant did not object to those questions, and did not alert the trial court that his objection would have been based on the prosecutor's nondisclosure of the conversation that provided the source of those questions, this issue cannot be considered when raised for the first time on appeal; nor may defendant complain on appeal that he was prejudiced by testimony which he allowed to be interjected into the case. *See State v. Gutierrez,* 91 N.M. 54, 570 P.2d 592 (1977). *See also State v. Quintana.*

**D. Whether racial discrimination, as inferred by the prosecutor's exercise of peremptory challenges to exclude Hispanic members of the venire from serving on the jury, denied defendant equal protection, due process, a fair trial, and effective assistance of counsel.**

Prior to trial, defendant moved to require the prosecutor to state reasons for exercising peremptory challenges in a racially discriminatory fashion against Hispanic venire members. The motion was denied. During jury selection, defendant renewed the motion following the prosecutor's exercise

of his first peremptory challenge against a Hispanic-surnamed member of the venire. The renewed motion was denied. The prosecutor then exercised five more peremptory challenges against Hispanic-surnamed members of the venire. The final trial jury panel, including the alternates, did have several members with Hispanic surnames.

■ Defendant, who is black, contends that the prosecutor's exercise of peremptory challenges to remove most Hispanic-surnamed members of the venire denied him certain rights, requiring reversal of his conviction.

In *State v. Sandoval,* 105 N.M. 696, 736 P.2d 501 (Ct.App.1987), this court applied the standards set forth in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 2d 69 (1986), for reviewing a claim that a prosecutor has used peremptory challenges to purposefully discriminate against and exclude members of a defendant's racial group from the jury. In *Batson,* the Supreme Court held that a defendant may establish a prima facie case of purposeful discrimination in the selection of a trial jury solely on the evidence in his own proceeding concerning the prosecutor's exercise of peremptory challenges.[1] To establish that case, the defendant must show, in part, that the prosecutor has exercised those challenges to remove members *of the defendant's race.* Once defendant has shown a substantial underrepresentation of his racial group, he has made out a prima facie case of discriminatory purpose, and the burden then shifts to the state to rebut that case. *State v. Sandoval.* Here defendant did not show a substantial underrepresentation of his racial group and, thus, failed to meet his burden in establishing a prima facie case of discrimination.

Defendant further argues that the prosecutor's peremptory challenges of most Hispanic members of the venire deprived him of his sixth amendment right to a jury comprised of a fair cross section of the

1. In so holding, *Batson* modified the earlier ruling in *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), under which a defendant was required to show systematic exclusion of jurors based upon race from facts beyond those in his own case. *See State v. Sandoval.*

community where his trial was held. Defendant cites *Fields v. People,* 732 P.2d 1145 (Colo.1987) (en banc), in support of this proposition.

Without deciding whether *Fields* is applicable in this state, we note that under *Fields,* a defendant can establish the prima facie case of a sixth amendment claim "by showing that the persons excluded are members of a cognizable group for purposes of the fair cross-section requirement and that considering all the circumstances of the case there is a strong likelihood that the jurors were excused solely because of their membership in the group." 732 P.2d at 1156.

In the present case, had defendant been convicted of committing murder in the first degree, the crime with which he was charged, the jurors would have had to vote on whether to impose the death penalty. On voir dire, each Hispanic-surnamed individual who was excused by the prosecutor's peremptory challenge expressed a reservation, to some degree, about his or her ability to vote for that penalty. Defendant contends, however, that several non-Hispanics who expressed similar reservations were not excused by the prosecutor. Even so, because of the existence of these other factors, defendant has failed to demonstrate that the Hispanic-surnamed venire members were excused *solely* because of their membership in that group as required by *Fields.* Therefore, defendant's reliance on *Fields* is misplaced.

### E. Whether the admission of defendant's prior 1974 conviction denied him due process and a fair trial.

#### 1. Probative value versus prejudicial effect.

In 1974, defendant was convicted of assault with a deadly weapon upon a peace officer. Defendant moved to exclude all testimony regarding this conviction. The trial court denied the motion and ruled that it would permit testimony only as to the fact and date of the conviction and the title of the underlying crime. It further ruled that this limited testimony would be admitted only in the event defendant did testify and, in that event, for the sole purpose of impeaching defendant. *See* SCRA 1986, UJI 14–5022.

Defendant makes several arguments as to why the admission of this conviction denied him due process and a fair trial. Inherent in each argument is defendant's further argument that the probative value of this evidence was outweighed by its prejudicial effect, and thus the evidence should have been excluded.

■ Defendant first contends that as dishonesty was not an element of the 1974 crime, it was not appropriate for the purpose of impeachment. Even so, SCRA 1986, 11–609(A)(1) permits the introduction of a prior felony conviction to attack credibility, regardless of whether dishonesty was an element of that felony. *State v. Lucero,* 98 N.M. 311, 648 P.2d 350 (Ct.App. 1982).

■ Secondly, defendant contends that because of the similarity between the 1974 crime and the offense in this case, there is a clear danger that the earlier crime will prejudice or confuse the jury. However, Rule 11–609 does not prohibit evidence of a prior offense on the basis of its similarity with the presently charged offense. Rather, the question relating to the admissibility of a prior similar offense is whether the decision of the trial court was an abuse of its discretion. *Id.* This question will be addressed below.

Defendant then argues that the 1974 crime should have been excluded because he also had been previously convicted of three dissimilar crimes and they were admissible for impeachment purposes. Again, Rule 11–609 does not prohibit evidence of a prior conviction for a similar crime when evidence of prior convictions for dissimilar crimes is also available, and again, in such a situation, the question relating to the admissibility of the prior similar crime is whether the trial court abused its discretion when ruling on the admissibility. *See State v. Day,* 91 N.M. 570, 577 P.2d 878 (Ct.App.1978), *cert. denied,* 449 U.S. 860, 101 S.Ct. 163, 66

L.Ed.2d 77 (1980); *State v. Sibold,* 83 N.M. 678, 496 P.2d 738 (Ct.App.1972).

We now turn to the question of whether the trial court abused its discretion in allowing the admission of evidence of defendant's 1974 conviction. The focus of this question is whether the trial court properly determined that the probative value of the prior conviction outweighed its prejudicial effect against defendant. *See* SCRA 1986, 11–403 and –609(A)(1). *See also State v. Day* (discussing the relationship between former Evidence Rules 403 and 609). If the trial court's ruling is clearly against the logic and effect of the facts and circumstances of the case, its exercise of discretion in admitting the evidence was abused. *See State v. Lucero.*

The fact that the admission of evidence of a prior conviction may prejudice a defendant to some extent does not mean that the probative value of the evidence has been outweighed. *See State v. Hogervorst,* 90 N.M. 580, 566 P.2d 828 (Ct.App.1977). When evaluating the probative value of such evidence, consideration must be given to the fact that the supreme court's adoption of Evidence Rule 11–609 is tantamount to a determination by that court that such evidence does bear on the issue of credibility. *See State v. Lucero. See also* SCRA 1986, UJI 14–5022. In addition, where evidence is admissible under any particular theory, the decision to admit it will generally be upheld, *see State v. Ballinger,* 99 N.M. 707, 663 P.2d 366 (Ct.App.1983), *rev'd on other grounds,* 100 N.M. 583, 673 P.2d 1316 (1984), regardless of whether the appellate court would have reached the same conclusion regarding its admissibility. *See Edington v. Alba,* 74 N.M. 263, 392 P.2d 675 (1964).

In deciding whether the probative value of evidence of defendant's 1974 crime, admissible under Rule 11–609(A)(1) for impeachment purposes, outweighed its potential for unduly prejudicing the defendant, the trial court did evaluate the various factors set forth in *State v. Lucero* as they apply to the circumstances of the case. Our own evaluation of these factors follows.

There is a certain similarity between the crime of assault with a deadly weapon upon a peace officer and the crime of murdering a peace officer with a firearm. Because of the similarity, the possibility does exist that the introduction of evidence of that prior crime will have at least some prejudicial impact against defendant. However, Rule 11–609 inherently recognizes that evidence of a defendant's criminal history has the potential for creating prejudice, but this potential, by itself, does not render the evidence inadmissible. *State v. Garcia,* 80 N.M. 21, 450 P.2d 621 (1969).

Defendant's testimony regarding the events which led to his shooting of Officer Toler was crucial to his defense. Defendant's version conflicted with that of the state's witnesses. Thus, defendant's credibility as a witness was placed in issue and subject to impeachment. *Cf. State v. Duran,* 83 N.M. 700, 496 P.2d 1096 (Ct.App. 1972) (a decision based upon this common law proposition, prior to the adoption of the Rules of Evidence in 1973). Defendant cites various cases to support his contention that the prejudicial effect of admitting his 1974 conviction for impeachment purposes outweighed its probative value. Several of his authorities are not applicable because they are based upon the additional "exceptional circumstances" requirement for admission as set forth in the Federal Rule of Evidence 609 but which is not present in New Mexico's Evidence Rule 11–609. Several include the situation where the defendant chose not to testify because his prior convictions may have been admissible, or the situation where the "former conviction" arose out of the same events as those being tried. Defendant's remaining authorities present guidelines similar to those in *State v. Lucero* for examining the probative value of a prior conviction.

The trial court conducted a careful review of the *Lucero* guidelines as they applied to defendant's case. The trial court then determined that the probative value of defendant's 1974 conviction, for impeachment purposes only, outweighed its preju-

dicial effect and permitted its narrowly limited admission. Based upon our review, we cannot say that the trial court's decision was contrary to the logic and effect of the facts and circumstances of this case. *See, e.g., United States v. Givens,* 767 F.2d 574 (9th Cir.), *cert. denied,* 474 U.S. 953, 106 S.Ct. 321, 88 L.Ed.2d 304 (1985) (probative value of prior robbery and armed robbery convictions outweighed their prejudicial effect where defendant's credibility in armed robbery trial was directly at issue); *United States v. Fountain,* 642 F.2d 1083 (7th Cir.), *cert. denied,* 451 U.S. 993, 101 S.Ct. 2335, 68 L.Ed.2d 854 (1981) (no error where trial court knew of and applied balancing factors and did not decide mechanically); *United States v. Stewart,* 581 F.2d 973 (D.C.Cir.1978) (where there was a direct conflict in testimony, it was of paramount importance for jury to have all information to assess credibility); *United States v. Lamb,* 575 F.2d 1310 (10th Cir.), *cert. denied, Clary v. United States,* 439 U.S. 854, 99 S.Ct. 165, 58 L.Ed.2d 160 (1978) (where credibility was a central issue, prior convictions were admissible when the trial court carefully weighed their impeachment value against their prejudicial effect); *United States v. Hawley,* 554 F.2d 50 (2d Cir.1977) (where defendant asserted the increased prejudice because of the similarity between his prior conviction and the charged offense, there was no reason to assume that the trial court incorrectly considered this factor).

Because of the foregoing, we hold that the trial court did not abuse its discretion in admitting evidence of defendant's 1974 conviction.

**2. Remoteness in time.**

■ Defendant also contends that his 1974 conviction was not admissible because of the time limitation set forth in Rule 11–609(B). This rule does prohibit the admission of evidence of a conviction "if a period of more than ten (10) years has elapsed since the date of the * * * release of the witness from the confinement imposed for that conviction."

Defendant was confined in the Central Institute for Men in California because of his 1974 conviction. On September 13, 1976, he was transferred to the Central City Community Center, which defendant describes as a halfway house. On November 20, 1976, defendant was released on parole. Trial in this cause commenced November 5, 1986, and defendant testified two days later.

Defendant asserts that his release on September 13, 1976, to the halfway house constituted a release from confinement for the 1974 conviction. Defendant thus contends that the ten-year period of admissibility elapsed about two months prior to his trial and, therefore, proof of the earlier conviction was barred.

In California, a "person is deemed confined in a 'state prison' if he is confined in any of the prisons and institutions specified in Section 5003." Cal.Penal Code § 4504(a) (West 1982). The provisions of Section 5003 include "(q) Such other institutions and prison facilities as ... the Director of Corrections may be authorized by law to establish." Cal.Penal Code § 5003(q) (West 1982). The Director is authorized to "establish and operate facilities to be known as community correctional centers." Cal.Penal Code § 6250(a) (West Cum.P.P. 1987).

It appears reasonable to conclude that the Central City Community Center is a community correctional center. Since defendant was not released from that center until November 20, 1976, the ten-year period of admissibility of his 1974 conviction pursuant to Rule 11–609(B) had not expired as of the date defendant testified in this trial.

Defendant's arguments regarding Cal. Penal Code § 2900.5 (West 1982) are not germane because that section relates only to the award of credit for time spent in custody prior to the commencement of a sentence rather than to the meaning of "confinement."

**F. Whether the trial court erred in allowing testimony concerning the circumstances behind defendant's 1974 conviction, thereby depriving him of due process and a fair trial.**

Defendant shot Officer Toler with the officer's own service revolver. As part of

his defense, defendant presented a witness who testified about and demonstrated the difficulty of removing a revolver from Officer Toler's service holster. The state later presented the testimony of Officer Owens as rebuttal.

Officer Owens was involved in the incident that led to defendant's 1974 conviction. While he did not mention the fact of that conviction, Owens testified that defendant had obtained the revolver of Owens' police partner, who was also involved in the incident. Owens did not know how defendant had obtained the weapon, but stated that his partner's holster was similar to Toler's. Owens also testified that defendant had pointed that revolver at his head.

Defendant sought to exclude Owens' testimony, claiming that it would create unfair prejudice against him. *See* Rule 11–403, which permits the exclusion of relevant evidence when it is found to be more prejudicial than probative. The trial court determined that the testimony was relevant with regard to defendant's prior knowledge and use of a holster similar to Toler's, as well as to defendant's opportunity and motive, and that the testimony had more probative weight than prejudicial effect. Thus, Owens was allowed to testify.

Under some circumstances, relevant evidence of other wrongs or acts to prove knowledge, opportunity, and motive is admissible. *See State v. Ross,* 88 N.M. 1, 536 P.2d 265 (Ct.App.1975). Admission is permitted when the trial court finds the evidence relevant to a disputed issue other than a defendant's character. *See State v. Beachum,* 96 N.M. 566, 632 P.2d 1204 (Ct. App.1981). If such relevancy is found, the trial court must then weigh the prejudicial effect of the evidence of other wrongs or acts against its probative value. *Id.* Following that, the decision on whether to admit the evidence is a matter addressed to the sound discretion of the trial court and will be upheld absent an abuse of that discretion. *State v. Smith,* 92 N.M. 533, 591 P.2d 664 (1979). *See also State v. Hargrove,* 81 N.M. 145, 464 P.2d 564 (Ct. App.1970).

The fact that Owens' testimony may have had some prejudicial effect does not require its exclusion. *See State v. Hogervorst.* The testimony was relevant and probative of the issues stated by the trial court and initially raised by defendant. The similarity between the 1974 incident and the incident in this case does not justify a finding that the trial court abused its discretion in admitting Owens' testimony, *see State v. Allen,* 91 N.M. 759, 581 P.2d 22 (Ct.App.1978), and we will not hold otherwise.

**G. Whether the trial court exceeded its statutory authority and deprived defendant of due process by imposing a special "use of firearm" alteration of the basic sentence, consecutive to the maximum general alteration for aggravating circumstances.**

Defendant was sentenced to a term of nine years for his conviction of second-degree murder. Upon determining that aggravating circumstances existed in the commission of the crime, the trial court enhanced that term by one-third, or three years, pursuant to NMSA 1978, Section 31–18–15.1(C) (Repl.Pamp.1987), and then imposed a one-year consecutive sentence for defendant's use of a firearm in the commission of a felony, pursuant to NMSA 1978, Section 31–18–16 (Repl.Pamp.1987).

Defendant argues that the trial court exceeded its sentencing authority by imposing the one-year sentence for firearm use, because Section 31–18–15.1(C) provides that "in no case shall the alteration exceed one-third of the basic sentence." We read the words "the alteration" as applying to the alteration of the basic sentence only where mitigating or aggravating circumstances surround the offense or concern the offender. This statute specifically precludes the fact that a firearm was used from the trial court's determination that aggravating circumstances exist.

Defendant was charged with the use of a firearm in the murder of Officer Toler, and the jury found that he did use a firearm in committing that crime. In this

regard, we read Section 31–18–16 as providing a separate and distinct basis for further altering defendant's basic sentence in addition to the alteration permitted by Section 31–18–15.1; the language and requirements of each statute are totally independent of the other. *See, e.g., State v. Reaves*, 99 N.M. 73, 653 P.2d 904 (Ct.App. 1982).

As the sentences required by each of these statutes are mandatory upon the trial court, *see State v. Mayberry*, 97 N.M. 760, 643 P.2d 629 (Ct.App.1982), we hold that the trial court did not exceed its sentencing authority.

**H. Whether cumulative error denied defendant equal protection, due process, a fair trial, and effective assistance of counsel.**

Defendant argues that, in the aggregate, the assignment of errors he has raised on appeal denied him his right to a fair trial. We have addressed his claims on appeal and have found either that no errors were committed or that insufficient prejudice was established at trial or on appeal to support a conclusion that he was denied a fair trial. *See State v. Martin*, 101 N.M. 595, 686 P.2d 937 (1984); *State v. McGuinty*, 97 N.M. 360, 639 P.2d 1214 (Ct.App. 1982); *State v. Vallejos*, 86 N.M. 39, 519 P.2d 135 (Ct.App.1974). The doctrine of cumulative error has no application where no errors were committed and where defendant has received a fair trial. *State v. Taylor*, 104 N.M. 88, 717 P.2d 64 (Ct.App. 1986). Thus, we rule against defendant on this issue.

Defendant's conviction, judgment and sentence are affirmed.

IT IS SO ORDERED.

ALARID, J., concurs.

MINZNER, J., concurs specially.

MINZNER, Judge, concurring specially.

I concur in the majority opinion, except as to its discussion of defendant's fair trial argument based on *Fields v. People*, 732 P.2d 1145 (Colo.1987) (en banc). As to that discussion, I am concerned that we are reaching an issue that was not preserved on appeal.

In the present case, a sixth amendment claim raised at trial and in the docketing statement was a claim based on *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) (a prospective juror who voices general objection to the death penalty or expresses scruples against its infliction cannot be excused for cause). This claim was not briefed and therefore has been abandoned. *State v. Vogenthaler*, 89 N.M. 150, 548 P.2d 112 (Ct.App. 1976). I am not persuaded that a sixth amendment claim similar to that made in *Fields v. People* was raised at the trial level. On this issue, it was important to alert the trial judge to such a claim at a time and place where any error could be corrected. That not having been done, it was not preserved on appeal. *See* SCRA 1986, 12–216. By contrast, the Colorado Supreme Court addressed an issue that was raised at trial and on appeal. Therefore, defendant's reliance on *Fields v. People* is misplaced.