784 P.2d 16

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Casimiro "Casey" L. ARAGON,**
**Defendant–Appellant.**

No. 17916.

Supreme Court of New Mexico.

Dec. 14, 1989.

Jacquelyn Robins, Chief Public Defender, Linda Yen, Asst. Appellate Defender, Santa Fe, for appellant.

Jim Foy, Silver City, Trial Counsel.

Hal Stratton, Atty. Gen., Charles H. Rennick, Asst. Atty. Gen., Sante Fe, for appellee.

## OPINION

SOSA, Chief Justice.

Appellant was convicted by a jury in Luna County of first degree murder contrary to NMSA 1978, Section 30–2–1(A)(1) (Repl.Pamp.1984), and of aggravated burglary contrary to NMSA 1978, Section 30–16–4(A)(C). He was sentenced to life for the murder count with a mandatory one-year firearm enhancement, and nine years plus two year's probation for the aggravated burglary count. The sentences were ordered to be served consecutively.

There is no dispute that Appellant killed Rufina Mendoza. Appellant and the victim had lived together off and on for nine years. Appellant had fathered the victim's child. He suffered from a nervous disorder, and for a while the victim served as his custodian to receive social security payments for him. When the parties' relationship grew unstable, the victim forced Appellant to leave her home. Appellant began drinking heavily and had to acquire a

new custodian. During this time the victim made it difficult for Appellant to visit his son and to come to the victim's house.

On the evening of July 25, 1986, after drinking heavily, Appellant entered the victim's home through a closed, unlocked screen door, displayed a gun, and stated he was going to kill the victim. The victim's adult daughter stood between Appellant and her mother but was told by Appellant to get out of the way or he would kill her, too. Appellant then fired a shot into the floor. The victim's daughter threw a pillow at Appellant, knocking him into a chair. Appellant fired a shot into the victim's shoulder, causing her to fall to the floor. Appellant then walked to where the victim had fallen, looked down at her, and shot her again. Appellant then shot himself. The victim died from the gunshot wounds.

Appellant raises several points on appeal. However, because we reverse the judgment and remand the case to the trial court for a new trial, we consider only the principal issue raised on appeal. We phrase that issue as follows:

DID THE PROSECUTOR'S USE OF PEREMPTORY CHALLENGES TO STRIKE THE ONLY TWO BLACKS WHO HAD A CHANCE TO SERVE ON THE JURY UNCONSTITUTIONALLY DEPRIVE APPELLANT OF A JURY REFLECTING A REPRESENTATIVE CROSS SECTION OF THE COMMUNITY?

■ We answer this question in the affirmative, and thus settle an issue that heretofore has not been squarely decided by the courts of our state. At trial, three Blacks were members of the venire. Appellant is not Black, but Hispanic. His victim, too, was Hispanic. One Black member of the venire was excused for cause. The two other Black members were peremptorily excused by the prosecutor. Appellant contends that the prosecutors' peremptory strikes unconstitutionally deprived him of a jury reflecting a cross section of the community, in violation of both the federal and state constitutions (U.S. Const. amend. VI and N.M. Const. art. II, § 14). The sixth amendment provides in pertinent part, that an accused shall be tried by "an

impartial jury." Similarly, Article II, Section 14 of our state constitution provides in pertinent part: "[T]he accused shall have the right to * * * a speedy public trial by an impartial jury * * *."

When the prosecutor's strikes were challenged at trial, he offered as an explanation that the individuals in question might be related to a Black defendant then being prosecuted by the State in the same court and raised the possibility that the two potential jurors would be prejudiced against the State in its prosecution of Appellant. After hearing the prosecutor's explanation, the court overruled Appellant's objection to the prosecutor's peremptory challenges, and the potential jurors were stricken.

The prosecutor had asked no questions during voir dire to elicit from the two prospective jurors responses showing that they in fact were related to the other defendant. Nothing in the record shows that the prosecutor had anything on which to base his opinion that these individuals might be untrustworthy jurors other than his own statement to the court about their possible blood relationship to the other defendant. Nor did the court conduct an inquiry as to how the prosecutor arrived at this conclusion. The court in effect simply accepted the prosecutor's rationale for excluding the Black prospective jurors and then overruled Appellant's objection.

## I. *The Batson and Taylor Holdings As They Affect Jury Selection*

■ Constitutional jurisprudence in this area is clear on two points: (1) Under the Equal Protection Clause of the fourteenth amendment, a defendant may challenge the constitutionality of the state's selection of members of the petit jury when the defendant shows that he is a member of a cognizable racial group and establishes a prima facie case that potential jurors from his group were excluded from the jury for reasons of race. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); (2) Under the sixth amendment, a defendant is entitled to select a petit jury from a venire that constitutes a representative cross section of the

community in which he is tried. *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).

Appellant contends that the prosecutor's alleged racially-discriminatory striking of two Black members from the venire deprived him of a jury comprised of a fair cross section of the community. Appellant thus asks us in effect to adopt the *Wheeler* Doctrine, discussed below, and to grant the holding in *Taylor* onto the holding in *Batson*, arguing that under the state constitution we may afford greater protection to a criminal defendant than has been given criminal defendants by rulings of the United States Supreme Court.

The State argues against this. To the State, the sixth amendment requirement that the venire be selected from a cross section of the community is not applicable to the prosecutor's peremptory strikes of prospective jurors. The State argues that *Taylor* and the sixth amendment apply to selection *of* the venire, and that *Batson* and the Equal Protection Clause apply to selection *from* the venire. In the State's words, "the Sixth Amendment requirement that the jury be selected from a fair cross section of the community is not applicable to the petit jury itself, but only to the venire, or jury pool."

Because we decide this case on the independent and adequate state ground of the New Mexico Constitution, Article II, Section 14, we do not decide whether the State is correct in asserting that the sixth amendment proscription against exclusion of a section of the community from jury service extends to the prosecutor's use of preemptory challenges.[1]

## II. *How Our Court of Appeals Has Addressed This Issue*

Our court of appeals has come close to agreeing with Appellant's position. In *State v. Crespin*, 94 N.M. 486, 488, 612 P.2d 716, 718 (Ct.App.1980), decided before

*Batson*, the court in dictum linked "systematic acts by the prosecutor" in striking members of a minority racial group from the petit jury with a violation of Article II, Section 14 of our constitution. In *Crespin*, the sole Black member of the venire was stricken by the prosecutor, but the court felt unable from that fact alone to conclude that the State systematically had excluded Blacks from the jury.

In *State v. Sandoval*, 105 N.M. 696, 736 P.2d 501 (Ct.App.1987), the court applied *Batson* to a factual situation in which the defendant was Hispanic and the prosecutor peremptorily struck the only two Hispanics who could have sat on the jury. Noting that "*Crespin* has been modified by *Batson*," *id.* at 699, 736 P.2d at 504, the court decided the issue strictly on an equal protection basis. Yet, the dictum in *Crespin*, to the effect that a challenge to racially biased peremptory strikes based on the state constitution might succeed if brought in a proper case, was not laid to rest.

In *State v. Hall*, 107 N.M. 17, 751 P.2d 701 (Ct.App.), *cert denied*, 107 N.M. 16, 751 P.2d 700 (1988), the court of appeals was asked to decide the issue that is now before us. In *Hall*, the defendant was Black and the peremptorily stricken potential jurors were Hispanic. Defendant challenged the strikes on sixth amendment grounds, relying on *Fields v. People*, 732 P.2d 1145 (Colo.1987). The court held that *Fields* was inapplicable because defendant did not show that the potential jurors with Hispanic surnames "were excused *solely* because of their membership in that group as required by *Fields*." *Hall*, 107 N.M. at 22, 751 P.2d at 705 (emphasis in original). In another recent case raising the issue of challenged peremptory strikes, *State v. Goode*, 107 N.M. 298, 756 P.2d 578 (1988), the court of appeals was not called upon to decide the issue raised in *Hall*, but resolved the case solely on *Batson–Sandoval* equal protection grounds.

---

1. Pursuant to the "plain scrutiny" standard announced in *Michigan v. Long*, 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 3476–77, 77 L.Ed.2d 1201 (1983), we note that we consider none of the federal precedents discussed in the body of this opinion to compel the result reached today. Rather, we consider these federal cases for the guidance they may offer, just as we consider the precedents of other jurisdictions.

III. *Origins and Elaboration of the Wheeler Doctrine*

In *People v. Wheeler,* 22 Cal.3d 258, 583 P.2d 748, 148 Cal.Rptr. 890 (1978), the California Supreme Court held that both the federal sixth amendment and equivalent section of the California constitution guaranteed a criminal defendant the right to trial by jury drawn from a representative cross section of the community, and that a prosecutor's systematic use of peremptory strikes to exclude members of a cognizable racial group violated that section of the California constitution. Other state courts have followed California's lead: *State v. Superior Court In & for Maricopa County,* 157 Ariz. 541, 760 P.2d 541 (1988); *Riley v. State,* 496 A.2d 997 (Del.1985), *cert. denied,* 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986); *State v. Neil,* 457 So.2d 481 (Fla.1984); *Commonwealth v. Soares,* 377 Mass. 461, 387 N.E.2d 499, *cert. denied,* 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979); *State v. Gilmore,* 103 N.J. 508, 511 A.2d 1150 (1986). *See also, Kibler v. State,* 546 So.2d 710 (Fla.1989).

The case that was cited but not applied by our court of appeals in *Hall, Fields v. People,* in turn adhered to the *Wheeler Doctrine.* In *Fields,* a Black defendant challenged peremptory strikes of Hispanics. The court held:

> [A] prosecutor's purposeful, discriminatory and systematic exercise of peremptory challenges in a given case to exclude from the jury panel Spanish-surnamed persons solely on the basis of presumed group characteristics violates the sixth amendment to the United States Constitution and article II, section 16 of the Colorado Constitution.

732 P.2d at 1155.

In assessing whether such a violation had taken place, the court followed the criteria discussed in *Wheeler:*

> [T]he party may show that his opponent has struck most or all of the members of the identified group from the venire, or has used a disproportionate number of peremptories against the group. He may also demonstrate that the jurors in question share only this one characteristic—their membership in the group—and that in all other respects they are as heterogenous as the community as a whole. Next the showing may be supplemented when appropriate by such circumstances as the failure of his opponent to engage the same jurors in more than desultory voir dire, or indeed to ask them any questions at all. Lastly * * * the defendant need not be a member of the excluded group in order to complain of a violation of the representative cross section rule; yet if he is, and especially if in addition his alleged victim is a member of the group to which the majority of the remaining jurors belong, these facts may also be called to the court's attention.

*Id.* at 1156 (citation omitted).

The Colorado Supreme Court then applied a *Batson* test to determine how the trial court should have resolved any effective challenge by the defendant of the prosecutor's peremptories. This test has been thoroughly set forth by our own court of appeals in *State v. Goode,* 107 N.M. at 301–303, 756 P.2d at 581–583, and need not be summarized here. It is noteworthy that in both *Fields* and *Goode,* after applying the relevant tests, the courts did not find the asserted violation of the defendant's rights. In *Fields,* the court held: "[O]ur review of the voir dire convinces us that the circumstances do not support the defendant's argument that there is a strong likelihood that the jurors were excused *solely* because of their membership in the group." 732 P.2d at 1157. (emphasis added). In *Goode,* the court found that the prosecutor did not know that in striking a woman who had previously sat on a hung jury, she had stricken a Black person from the jury, and thus the court found that the state "rebutted the prima facie case by providing a racially-neutral explanation for its challenge." 107 N.M. at 304, 756 P.2d at 584.

We emphasize that courts which have approved the *Wheeler* Doctrine or a rationale similar to it have made it clear that the racial identities of the defendant and of the challenged stricken jurors need not be the same. *See, e.g., Kibler,* 546 So.2d 710 (1989) (defendant was White and the strick-

en prospective jurors were Black). Indeed, under a *Wheeler* rationale, challenges may be made even when the stricken jurors are not members of a cognizable racial minority. *Roman v. Abrams,* 822 F.2d 214 (2nd Cir.1987) (challenged stricken jurors were white), *cert. denied,* — U.S. —, 109 S.Ct. 1311, 103 L.Ed.2d 580 (1989).

The Supreme Court has not yet resolved the issue before us, although in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), it was presented with this issue but declined to address it. Soon, however, the Court will address the issue. *See People v. Holland,* 121 Ill.2d 136, 117 Ill.Dec. 109, 520 N.E.2d 270 (1988), *cert. granted,* — U.S. —, 109 S.Ct. 1309, 103 L.Ed.2d 579 (1989). Appellant finds support for his argument in *Gray v. Mississippi,* 481 U.S. 648, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987). There the Court applied the rationale of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), to a factual setting in which a prospective juror was held improperly excluded for cause in a capital murder case when she gave ambiguous answers to her views on the death penalty. *Witherspoon* and, in part, *Gray,* were based on the defendant's right to an impartial jury under both the sixth and fourteenth and sixth amendments. While the issue under *Gray* was different from the issue here, Appellant argues that the Supreme Court looks favorably on a coalescence of sixth and fourteenth amendment challenges to juries that are erroneously chosen, and thus urges us to apply the *Wheeler Doctrine* in his favor because of *Gray's* proximity to that doctrine.

We are thus left with two tasks: (1) To decide whether to adopt the *Wheeler Doctrine,* thereby agreeing with Appellant, as he puts it, to "affirm the dictum in *Hall;*" and (2) To decide, by whatever standard of review we adopt, whether the trial court erred in overruling Appellant's objection to the prosecutor's striking of the two prospective black jurors and in accepting the prosecutor's explanation for why the two persons were struck from the jury.

## IV. *Our Holding on Appeal*

We hold that this issue is to be decided on state constitutional grounds. We accept the rationale in *Wheeler* and its progeny, and in the cited cases that have not explicitly relied on *Wheeler* but which have nonetheless relied on the sixth amendment to prohibit the prosecution from using racially discriminatory peremptory challenges that would prevent the defendant from being tried by a jury that represents a fair cross section of the community in which the defendant is being tried. We agree with the court in *Taylor* that it is unnecessary for the petit jury to "mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition." 419 U.S. at 538, 95 S.Ct. at 702.

At the same time, however, we feel that the state should not be able to accomplish indirectly at the selection of the petit jury what it has not been able to accomplish directly at the selection of the venire. In the case before us, while the venire may have reflected a fair cross section of the number of Blacks in the county in which defendant was to be tried, if those Blacks are then excluded as soon as the prosecution sees them in the venire, of what practical effect is the constitutional protection of Article II, Section 14 of our constitution?

Using the criteria chosen by the court in *Fields,* we find the prosecutor's conduct in the case before us lacking. First, Appellant showed that the prosecutor struck the only two Blacks who had a chance to serve on the jury. Second, Appellant showed that the two prospective jurors ostensibly shared only this one characteristic: membership in the same cognizable racial minority. Third, other than their race, the two prospective jurors were ostensibly as heterogenous as the community as a whole. Fourth, the prosecutor failed to engage these individuals in more than a random voir dire, and specifically, he failed to engage them in questions about their relationship to the other defendant whom the State was allegedly prosecuting in the same court. In other words, the prosecutor established no predicate for his subse-

quent explanation for his peremptory challenges, in that he elicited no testimony on voir dire to establish that the two individuals were indeed related to the other defendant.

Having found that Appellant established at trial a prima facie showing that the prosecution violated his rights under Article II, Section 14, entitling him to a jury representing a fair cross section of the community, we now determine whether the trial court properly resolved the challenge to the prosecutor's use of his peremptory strikes. In other words, did the trial court properly assess the prosecutor's explanation for his peremptory striking of the Black jurors and did it correctly decide that this explanation passed constitutional muster? As the court stated in *Goode:*

> Did the state meet its burden of showing its peremptory challenge was racially neutral? [T]he state must justify its peremptory challenge by explaining what racially-neutral considerations led to the challenge. The state's explanations need not rise to the level justifying removal of the juror for cause. *State v. Sandoval.* They must, however, be clear and reasonably specific reasons that are related to the case to be tried * * * [T]he prosecutor may not rebut by denying a discriminatory motive * * *. Instead, the prosecutor must articulate a neutral explanation related to the particular case, giving a clear, concise, reasonably specific legitimate explanation for excusing those jurors * * *. Further, the trial court may not merely accept the state's proffered explanations, but has the duty to examine them and decide whether they are genuine and reasonable.

107 N.M. at 301–02, 756 P.2d at 581–82.

By the above criteria, the trial court's resolution of Appellant's challenge to the prosecutor's peremptory strikes of the two Blacks was constitutionally inadequate. The prosecutor's assertion that he feared the two Blacks were related to another defendant was based on nothing more than the prosecutor's own words. The prosecutor's explanation was hardly "a clear, concise, reasonably specific legitimate explana-

tion for excusing those jurors" as required by *Goode.* Instead it amounted to simply a bare denial of a discriminatory motive. Further, the trial court did nothing more than listen to the prosecutor's explanation and rubber stamp it, without inquiry or scrutiny, and without demanding of the prosecutor articulate and explicit substantiation. Such a procedure prevented Appellant from gaining access to the prosecutor's motives for striking the two Blacks and effectively violated his right to a jury drawn from a representative cross section of the community in which he was to be tried. Accordingly, his rights under Article II, Section 14 of our state constitution were abrogated, and he should be given a new trial.

We reverse the judgment of the trial court and remand the case for a new trial to be conducted in a manner that is not inconsistent with our decision herein.

IT IS SO ORDERED.

RANSOM, J., and STEVE HERRERA, District Judge, concur.