756 P.2d 578

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Edward GOODE, Defendant–Appellant.**

**No. 10087.**

Court of Appeals of New Mexico.

May 5, 1988.

Certiorari Denied June 13, 1988.

Hal Stratton, Atty. Gen., Katherine Zinn, Charles H. Rennick, Asst. Attys. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Deborah A. Moll, Bruce R. Rogoff, Assistant Appellate Defenders, Santa Fe, for defendant-appellant.

## OPINION

APODACA, Judge.

Defendant appeals his conviction for aggravated battery, raising two issues. He first contends his constitutional rights were violated by the state's peremptory challenge of the only member of his race who was on the panel of potential jurors. In addition, he argues there was insufficient evidence to convict him. We disagree with defendant's contentions and affirm his conviction.

## I.  PEREMPTORY CHALLENGE ISSUE

Defendant is black. The crime for which he was convicted involved a white victim. The jury panel assembled for defendant's trial included only one black person, a Ms. Harty. During voir dire, defense counsel asked the jury panel if any of its members had previously sat on a jury. Several of them answered affirmatively, and counsel proceeded to ask follow-up questions. Ms. Harty had sat on a criminal jury that had not reached a verdict; a Mr. Godfrey, a white man, had also sat on a hung jury. The other panel members who had previously served as jurors had sat on juries that had reached a verdict. During jury selection in the judge's chambers, the prosecutor peremptorily challenged Ms. Harty. After the jury had been selected and counsel returned to open court, defendant informed his counsel that Ms. Harty was black, after which counsel objected to the peremptory challenge of the only black on the jury panel. From the record, it appears that neither the trial judge, the prosecutor, nor defense counsel realized Ms. Harty was black until after the jury selection process had been completed.

In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court held that the state's power to use peremptory challenges in criminal trials is limited by the equal protection clause of the federal constitution. This court followed that decision in *State v. Sandoval*, 105 N.M. 696, 736 P.2d 501 (Ct.App.1987). Thus, the state may not use its peremptory challenges in a racially-discriminatory manner to exclude members of a cognizable racial group from a jury simply because of such membership. *Batson v. Kentucky; State v. Sandoval.* The state's discriminatory use of its peremptory challenges violates a defendant's right to equal protection of the laws. *Id.;* U.S. Const. amend XIV; N.M. Const. art. II, § 18.

*Batson* and *Sandoval* provide us with a framework for analyzing defendant's constitutional claim in this appeal. Under

those cases, a claim of discriminatory use of peremptory challenges must be examined under a two-step process. First, a defendant raising the issue must establish a prima facie case tending to show that the state's challenges were exercised in a discriminatory manner. Once the defendant has made the requisite showing, the burden then shifts to the state to come forward with racially-neutral explanations for its challenges. *State v. Sandoval.*

### A. Establishment of Prima Facie Case

To establish a prima facie case, defendant must show that: (1) he is a member of a cognizable racial group; (2) the state has exercised its peremptory challenges to remove members of that group from the jury panel; (3) these facts and any other relevant circumstances raise an inference that the state used its challenges to exclude members of the panel solely on account of their race. *State v. Sandoval.* It is undisputed that defendant met the first two requirements: he is black, and the state used a peremptory challenge to remove a black woman from the jury panel. Thus, we are left to examine whether the third requirement is present here to establish a prima facie case.

■ We must initially decide what factors should be considered in determining whether a prima facie case of discriminatory challenges has been made. At least one court has held that the prosecutor's reasons for the challenges should be considered at this initial stage as well as at the later stage when determining whether the prima facie case has been overcome. *See State v. Antwine,* 743 S.W.2d 51 (Mo.1987) (En Banc). Another court, however, rejected that approach and reasoned that the prosecutor's justifications for the challenges should not be considered when determining whether a prima facie case has been established, but only when determining whether that prima facie case has been rebutted. *See People v. Granillo,* 197 Cal. App.3d 110, 242 Cal.Rptr. 639 (1987). We believe that analysis of the state's justifications is properly left exclusively for the second stage of the *Batson–Sandoval* process, and we thus adopt the approach taken by the court in *Granillo.*

■ One circumstance that will always raise an inference of racial discrimination is a showing by defendant that his racial group is substantially underrepresented on the jury, in comparison to that group's share of the general population. *State v. Sandoval.* Another indicator supporting such an inference is the susceptibility of the case to racial discrimination, *i.e.,* where the victim is one race and defendant another, or all of defendant's witnesses are of a different race than the state's. *Chew v. State,* 71 Md.App. 681, 527 A.2d 332 (1987). Finally, a showing that the state's challenges have caused the jury to contain no members of defendant's race should raise such an inference. *United States v. Chalan,* 812 F.2d 1302 (10th Cir.1987).

Defendant in this appeal has shown that the state's peremptory challenge prevented the only black panel member from serving on the jury. Additionally, the victim was white, both of the state's witnesses were white, and the case involved overtones of an intimate interracial relationship. For these reasons, we believe the case was susceptible to discrimination, and the state had motivation to exercise its challenges in a discriminatory fashion. Defendant did not attempt to show that his race was substantially underrepresented on the jury. We hold nevertheless that defendant established the requisite prima facie case of discriminatory use of the state's peremptory challenges.

### B. Racially–Neutral Explanation

We necessarily reach the second step of our analysis: Did the state meet its burden of showing its peremptory challenge was racially neutral? Under this phase, the state must justify its peremptory challenge by explaining what racially-neutral considerations led to the challenge. The state's explanations need not rise to the level justifying removal of the juror for cause. *State v. Sandoval.* They must, however, be clear and reasonably specific reasons that are related to the case to be tried. *State v. Gilmore,* 103 N.J. 508, 511 A.2d

1150 (1986). The prosecutor may not rebut defendant's prima facie case by merely stating that he challenged such jurors because he believed they would be partial to defendant because of their shared race. *Batson v. Kentucky.* Likewise, the prosecutor may not rebut by denying a discriminatory motive. *Id.* Instead, the prosecutor must articulate a neutral explanation related to the particular case, giving a clear, concise, reasonably specific legitimate explanation for excusing those jurors. *Id.* Further, the trial court may not merely accept the state's proffered explanations, but has the duty to examine them and decide whether they are genuine and reasonable. *State v. Gilmore; People v. Turner,* 42 Cal.3d 711, 230 Cal.Rptr. 656, 726 P.2d 102 (1986) (In Bank). A trial court's determination in this connection, like its determination of whether defendant has established a prima facie case, is a factual determination, not a question of law, and will not be disturbed on appeal unless it is unsupported by substantial evidence. *Batson v. Kentucky; United States v. Woods,* 812 F.2d 1483 (4th Cir. 1987) (trial court's findings are not clearly erroneous, so will not be reversed); *Gamble v. State,* 257 Ga. 325, 357 S.E.2d 792 (1987) (same); *cf. State ex rel. Reynolds v. Niccum,* 102 N.M. 330, 695 P.2d 480 (1985) (equating "clearly erroneous" standard of review with "substantial evidence" standard).

Neither *Batson* nor *Sandoval* provide guidance to us with respect to the factors to be considered in assessing the state's explanations for its challenges, because in neither case did the state offer any reasons for its challenges. Other cases decided since *Batson,* however, have addressed this question. An analysis of those cases establishes definite guidelines that courts should consider when called upon to determine whether the state's justification for exercising a peremptory challenge is pretextual or genuine.

■ By far the most common factor noted by courts holding a state's explanations to be pretextual is a varying treatment of white and nonwhite panel members. *See,*

*e.g., Gamble v. State* (black juror struck because relative or friend had alcohol or drug abuse problem; white jurors who also had relatives or friends with such problems not struck; also, black struck because of allegedly low intelligence, but illiterate whites not struck); *Floyd v. State,* 511 So.2d 762 (Fla.App.1987) (black student challenged because prosecutor did not like to have students on his jury, but white student not challenged); *People v. Turner* (black juror made mistakes in answering long, extremely formal voir dire question; white jurors who also made mistakes not challenged); *cf. People v. Hall,* 35 Cal.3d 161, 197 Cal.Rptr. 71, 672 P.2d 854 (1983) (In Bank) (pre-*Batson* case decided under California interpretation of its constitution; black juror removed because she had a son about defendant's age, but white jurors who also had sons about same age not removed). Varying treatment such as that exhibited in the cited cases is a strong indicator that the reason given for the challenge is not genuine, but instead was made for discriminatory purposes.

Another consideration in assessing peremptory challenges has been the extent of the prosecutor's voir dire of potential jurors of defendant's race. If the prosecutor has concerns about a juror's attitudes, and especially if those concerns are based on that juror's race, some courts have held that failure to question the panel members about those concerns indicates the concerns are not genuine and are covering up a discriminatory motive for challenging the jurors. *See United States v. Brown,* 817 F.2d 674 (10th Cir.1987) (blacks excluded from jury because defense counsel prominent black; court said prosecutor should have questioned panel members regarding affinity toward defense counsel); *Gamble v. State* (minimal voir dire of blacks; struck one black because left army after six years, and prosecutor assumed reason for leaving was sinister; should have questioned him about reasons for leaving service); *People v. Turner* (same); *People v. Wheeler,* 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978) (pre-*Batson* case based on California constitution; general statement that desultory voir dire, or none at

all, is indicator to be considered in assessing peremptory challenges).

■ If a prosecutor's explanation shows that he is linking the panel member's race with an assumption that the member will act in a certain way or hold certain beliefs, the peremptory challenges will not withstand judicial scrutiny. *See United States v. Brown* (assumption that all blacks will be influenced to acquit defendant because of defendant's black counsel); *State v. Gilmore* (assumption that all blacks are Baptists). Instead of making such assumptions and acting on them, a prosecutor should attempt to ascertain whether the concerns based on those assumptions are valid by asking the panel members pertinent questions during voir dire.

■ An explanation for striking a juror that does not appear to be related to the case being tried is suspect, and may be held to be pretextual. *See Gamble v. State* (one reason for removing juror was his membership in the Mason organization; prosecutor did not explain why this membership was relevant to the case, leading to court's conclusion that reason given was suspect); *People v. Turner* (challenge based on panel member's medically-related job; no indication that such work would produce a specific bias applicable to the case).

■ One indicator that was crucial in pre-*Baston* cases is a past pattern of challenges against members of a particular racial group. If a defendant can show such a historical pattern, the claim that the prosecution's justifications for its strikes are not genuine will be strengthened. *See United States v. Mathews*, 803 F.2d 325 (7th Cir. 1986), *rev'd on other grounds*, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988).

■ On the other hand, a factor that will support the prosecution's contention that the challenges were not made for purposes of discrimination is evidence that the prosecutor's conduct during voir dire and the selection process indicated a careful consideration of each panel member's merits as a juror. *United States v. Mathews*. We believe this factor is dispositive of this issue.

The prosecutor stated she had challenged Ms. Harty, the lone black juror, because that juror had previously been on a jury that had failed to reach a verdict. The prosecutor also claimed she did not know the juror was black when she exercised her peremptory challenge. The only other member of the panel who had been a member of a hung jury was Mr. Godfrey. However, his randomly-drawn number was such that the jury was selected before the prosecutor or defense counsel had an opportunity to use a peremptory challenge against him. Because of this circumstance, there is no indication that Ms. Harty, the only black panel member, was excluded based on a consideration that did not lead to the exclusion of Mr. Godfrey, a nonblack. Similarly, there is no evidence that the prosecutor was making racially-based assumptions about Ms. Harty's beliefs or values. In addition there is no showing of a past pattern of discriminatory strikes against members of defendant's race.

In essence, defendant argues that the state's excuse for exercising its peremptory challenge against Ms. Harty was not related to the case to be tried, which shows that it was not a genuine explanation. Defendant contends the state should have asked questions about Ms. Harty's service on the hung jury to establish that she might have been responsible for the jury's failure to reach a verdict or that her attitude toward jury service had been affected by her service on that hung jury. Although it is true, as we previously noted, that a minimal or nonexistent voir dire of jury panel members is an indicator to be considered in assessing the state's challenges, we cannot agree that the state's failure to question the black panel member in this case mandates a finding that the peremptory challenge was racially motivated.

Instead, the totality of the circumstances leads us to the opposite conclusion. The record of the jury selection shows that the prosecutor took detailed notes regarding which panel members had formerly served on juries. She knew which of them had been on juries that had reached a verdict

and which had sat on hung juries. Without further inquiry, the prosecutor's assumed connection between a prospective juror's previous service on a hung jury and a tendency or greater willingness to hang a subsequent jury may have been tenuous, but not implausible. The reason for the challenge is also related to the case to be tried in a way that, for example, membership in the Masons organization has been held not to be related. *See Gamble v. State.* A potential juror's history of service on criminal juries is unarguably relevant to the trial of a criminal case. Under other facts than those presented by this case, and especially if there was some evidence that similarly-situated nonblack panel members were treated differently, we could conclude that a peremptory challenge exercised without questioning a panel member was a mere pretext for a racially-motivated exclusion. Under the circumstances of this case, however, we cannot conclude that the trial court's determination to the contrary was not supported by substantial evidence.

Our determination is buttressed considerably by the unusual fact that the prosecutor, defense counsel and the trial judge all failed to recognize that Ms. Harty was black until the selection process had been completed. Normally, the prosecutor's claim that she did not realize Ms. Harty was black would be akin to a mere assertion that no discriminatory motive prompted the challenge. *Batson* and *Sandoval* establish that such an assertion is not enough to overcome a defendant's prima facie showing of discrimination. Here, however, both defense counsel and the trial judge stated they did not realize Ms. Harty was black. Defense counsel first became aware of her race when defendant pointed it out to him after the selection process was completed. The trial judge did not become aware of it until defendant objected to the use of the challenge. Since racially-discriminatory challenges are the evil that *Batson* and *Sandoval* aim to eliminate, and awareness of a panel member's race is a logical prerequisite to a challenge based on race, the prosecutor's apparent, and manifestly reasonable, lack of such knowledge militates against a determina-

tion that the challenge was racially motivated. We caution the trial courts, however, to note that this is an unusual factual situation and reiterate that in most cases a prosecutor's bald assertion that he or she did not know the panel member's race should have no effect on the court's assessment of the nature of the state's use of its peremptory challenges.

In summary, although we have concluded that defendant established a prima facie case of discrimination involving the state's use of its peremptory challenge, we hold nonetheless that the state rebutted the prima facie case by providing a racially-neutral explanation for its challenge. Defendant's claim that the jury selection process denied him equal protection of the law must thus fail.

## II. SUBSTANTIAL EVIDENCE ISSUE

■ Defendant contends the jury lacked sufficient evidence to convict him of aggravated battery. He testified that he intended to hit the victim with a large steel pipe to immobilize him. Additionally, he stated he hit the victim in self-defense. Yet, the other witnesses testified the victim had no weapon in either hand and was backing away from defendant when he was struck. Irrespective of this conflicting testimony, it was undisputed that the victim was knocked unconscious by the blow and his jaw was shattered. On appeal, this court must resolve all factual conflicts in favor of the verdict. *See State v. Lankford*, 92 N.M. 1, 582 P.2d 378 (1978). Consequently, we hold that substantial evidence supports the verdict.

Defendant's conviction is affirmed.

IT IS SO ORDERED.

BIVINS and GARCIA, JJ., concur.