McMILLAN, Judge.
The appellant was convicted of robbery in the first degree, in violation of § 13A-8-41, Code of Alabama 1975, and was sentenced to 25 years’ imprisonment. He was ordered to pay $500 to the victims’ compensation fund, $1,477.19 in restitution, and court costs.
On appeal, the appellant, a black male, argues that the State systematically excluded blacks from the jury on the basis of race, in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and Ex parte Branch, 526 So.2d 609 (Ala.1987). He further argues that the State failed to offer valid race-neutral reasons for its peremptory strikes of 11 of the 12 blacks serving on the jury venire.
The record reveals that, after the appellant made a timely Batson objection, the trial court asked defense counsel to make his pri-ma facie showing of discrimination. Defense counsel responded: “There were only twelve black members of the venire, which means there is only one on this jury panel. We think that the State used its strikes to systematically exclude blacks from the jury panel.” The trial court, without ruling on whether the appellant had established a prima facie case of discrimination, asked the State if it wished to respond. The State, without obtaining a ruling on the appellant’s Batson motion, answered in the affirmative and proceeded to offer the following explanations for its strikes:
“[Juror No. 23]: (black female, State’s second strike) — Struck because of bad checks prosecution by this prosecutor in district court;
“[Juror No. 40]: (black male, State’s fourth strike) — This juror had a prior DUI;
“[Juror No. 15]: (black female, State’s fifth strike) — This juror had been prosecuted by the District Attorney’s Office for bad checks. Her uncle had also been prosecuted by the State;
“[Juror No. 99]: (black female, State’s sixth strike) — The State and specifically this prosecutor has prosecuted this juror on bad check charges. She also has bad checks outstanding;
“[Juror No. 91]: (black male, State’s seventh strike) — This venire member has been prosecuted on bad checks. Also, the district attorney’s office has prosecuted a relative of this juror ... who is now presently incarcerated.
“[Juror No. 74]: (black male, State’s eighth strike) — This veniremember has also been prosecuted on bad checks; “[Juror No. 68]: (black female, State’s ninth strike) — The district attorney’s office prosecuted [her] brother ... who is presently incarcerated and also prosecuted another brother ... who was a child support defendant.
“[Juror No. 36]: (black female, State’s twelfth strike) — Prosecutor thought this veniremember had been prosecuted on bad checks. In addition, the district attorney’s office has had contact with this venire-member through their ‘task force’ and that is why the State struck this juror venire-member;
“[Juror No. 48]: (black female, State’s thirteenth strike) — The prosecutor stated the following: ‘The State struck Mrs. J. At that point I believe we were just kinda searching for strikes, Your Honor. It was race-neutral. I mean we had gotten to a point where we just had to begin striking as did the defense.’
“[Juror No. 97]: (black female, State’s fourteenth strike) — The State had prosecuted either this veniremember’s daughter or sister in juvenile court. Also prosecuted her sister in district court. She was also related to L.W. who the district attorney’s office had prosecuted.
“[Juror No. 11]: (black male, State’s fifteenth strike) — Law enforcement investigating an assault case involving Mr. S., district attorney’s office investigated since suspicious circumstances involving Mr. S. *35 In addition, the district attorney’s office has had prior contact with Mr. S.”
The prosecutor further stated:
“We would just state that no juror was struck because of race. They were struck for other reasons, being those that we have stated, in that we have either had contact with them through the district attorney’s office, either through prosecution or through on-going investigations or through juvenile court, which this prosecutor prosecutes also. And any other jurors, if the court would note that we also struck non-black jurors for those same reasons.”
The following colloquy then occurred between the trial court and defense counsel:
“THE COURT: Well, some of the reasons given, such as on [State’s 13th strike]— searching for strikes — doesn’t necessarily meet the criteria for race-neutral strikes, but the defendant has to show a systematic exclusion, not just of one juror venire person, but sufficient to show that they selected the jury systematically to exclude the blacks. And the evidence simply doesn’t show that.
“[DEFENSE COUNSEL]: Judge, let me make one further comment before you rule. If it is not systematic when you strike eleven of twelve, then what is?
“THE COURT: Well, the numbers themselves don’t show a prima facie case. You have to have the burden of showing a prima facie ease, and you haven’t shown that.”
A violation of Batson v. Kentucky, supra, may result from the improper striking of even one potential juror. In Ex parte Williams, 571 So.2d 987, 980 (Ala.1990), the Alabama Supreme Court held that a black defendant established a prima facie case of racial discrimination on grounds that the State struck four of the five black persons on the venire. Moreover, if the State offers explanations for its strikes without obtaining a ruling on whether the defense has made a prima facie showing, as it did here, the question of whether a prima facie ease has been proven becomes moot. See Hernandez v. New York, 500 U.S. 352, _, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991). In Jackson v. State, 594 So.2d 1289, 1292-93 (Ala.Cr.App.1991), this Court stated:
“In this case ... as noted above, the prosecutor stated his reasons for his strike prior to the trial court’s finding that the appellant had not established a prima facie case of discrimination. We note that one court has stated:
“As a practical matter, [ascertaining whether a defendant has established a prima facie case under Batson ] requires the trial court to consider the State’s explanation of the manner in which it employed its challenges prior to making a final determination as to whether a prima facie case exists.”
State v. Antwine, 743 S.W.2d 51, 64 (Mo.1987) (en banc), cert. denied, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988) (emphasis added). In that same case, the Missouri Supreme Court went on to direct Missouri trial judges ‘to consider the prosecutor’s explanations as part of the process of determining whether a defendant has established a prima facie case of racially discriminatory use of peremptory challenges.’ Antwine, 743 S.W.2d at 64. At least one jurisdiction has expressly refused to follow this approach, State v. Goode, 107 N.M. 298, 301, 756 P.2d 578, 581 (N.M.App.), cert. denied, 107 N.M. 308, 756 P.2d 1203 (1988), and two other jurisdictions have implicitly done so. See People v. Granillo, 197 Cal.App.3d 110, 115, 242 Cal.Rptr. 639, 641 (1987) (discussing California’s prohibition on racially discriminatory use of peremptory challenges which was formulated prior to Batson); Green v. State, 572 So.2d 543, 545-46 (Fla.App.1990), review denied, 581 So.2d 164 (Fla.1991). The courts in Goode, Granillo, and Green adhered to the position that the defendant must establish his prima facie case before the prosecution is obligated to justify its peremptory strikes. In fact, Florida’s Second District Court of Appeal indicated that even an insufficient reason advanced by the prosecution did not require a reversal by that court because the defendant had failed to establish a prima facie ease at trial. Green, 572 So.2d at 546^17.
*36 “In Ex parte Bird and Warner, 594 So.2d [676] at 680 [ (Ala.1991) ], the Alabama Supreme Court, discussing the establishment of a prima facie case under Batson, held that ‘the State’s failure to articulate a legitimate reason for one or more strikes may constitute one of the “facts and ... other relevant circumstances [that will] raise an inference” of discrimination.’ (Emphasis added.) Although the court cited Antwine to support that proposition, we do not read Ex parte Bird and Warner as a directive to Alabama trial courts to require the prosecutor, in all instances, to state his reasons for his strikes prior to the trial court’s making a determination as to whether the defendant has established a prima facie case of discrimination. However, Bird and Warner does mean that where, as here, the prosecutor volunteers his reasons prior to the trial court’s determination on the defendant’s establishment of a prima facie case, the trial court is to consider those reasons ha making that determination. This interpretation necessarily requires this Court to review those reasons in reviewing the trial court’s decision on the Batson motion. See Cowan v. State, 579 So.2d 13, 18-19 (Ala.Cr.App.1990), where this Court reviewed the sufficiency of the prosecutor’s reasons after commenting that the ‘trial court found not only that the appellant had failed to present a prima facie case of racial discrimination, but also that the State had given race-neutral reasons for striking each black venire person.’ Cf. McLeod v. State, 581 So.2d 1144,1154-55 (Ala.Cr.App.1990) (where the ‘trial court requires the prosecutor to state his reasons for his peremptory strikes without first requiring the defendant to establish a prima facie case of discrimination, this Court will review the reasons given by the prosecutor’); Thomas v. State, 555 So.2d 320, 322 (Ala.Cr.App.1989) (‘since the prosecutor’s reasons for striking [black venire-members] are on the record, we shall review the sufficiency of her explanations’); Currin v. State, 535 So.2d 221, 223 (Ala.Cr.App.), cert, denied, 535 So.2d 225 (Ala. 1988) (where the trial court did not make a determination as to whether the defendant had established a prima facie case, but the prosecutor’s reasons were of record, this Court reviewed the sufficiency of the reasons).”
It is well settled that, once a prima facie case of discrimination is established, the burden shifts to the State, which then must articulate clear, specific, and legitimate reasons for its strikes related to the particular case to be tried, which establish that the strikes are nondiseriminatory. See Ex parte Branch, supra, at 623; see also Ex parte Bird, 594 So.2d 676, 680 (Ala.1991).
The explanations given by the State for its strikes, which included the veniremembers’ criminal records, prosecution of family members, and poor reputation with law enforcement have been held to be valid race-neutral reasons. See King v. State, 612 So.2d 1333 (Ala.Cr.App.1992); Wilsher v. State, 611 So.2d 1175 (Ala.Cr.App.1992); Whittlesey v. State, 586 So.2d 31 (Ala.Cr.App.1992); Heard v. State, 584 So.2d 556 (Ala.Cr.App.1991).
However, the State’s thirteenth strike of juror no. 48, a black female, on grounds that “we were just searching for strikes,” is not a “clear, specific, and legitimate reason” for challenging the potential juror. Therefore, the State failed to overcome the appellant’s prima facie showing of discrimination, and the trial court erred in denying the appellant’s Batson motion.
We are mindful of the Alabama Supreme Court’s recent decision in Bui v. State, 627 So.2d 855 (Ala.1992), wherein that Court stated:
“[I]n Huntley v. State, 627 So.2d 1013 (Ala.1992), this Court held that in reviewing allegations that the prosecutor exercised the state’s peremptory strikes in a racially discriminatory manner, ‘the reviewing court’s inquiry ... shall not be restricted by the mutable and often overlapping boundaries inherent within a Saisora-analy-sis framework, but, rather, shall focus solely upon the ‘propriety of the ultimate finding of discrimination vet non.’ 627 So.2d at 1015, quoting United States v. Forbes, 816 F.2d 1006, 1010 (5th Cir.1987), in turn quoting Merrill v. Southern Methodist University, 806 F.2d 600, 605 n. 6 (5th *37 Cir.1986). In United States v. Forbes, the Fifth Circuit Court of Appeals, upholding the defendants’ convictions, noted:
“ ‘The Eleventh Circuit has observed, correctly we think, “Failure by a prosecutor to explain every peremptory strike of black jurors is not necessarily fatal to the prosecutor’s ability to rebut a prima facie case; likewise, explanation of most of the strikes on nonracial grounds does not necessarily’ ” satisfy his burden. United States v. David, 803 F.2d 1567, 1571 (11th Cir.1986).
“ ‘In this case, the prosecutor’s third strike, though unexplained, seems unlikely to have been the result of intentional discrimination. The confluence of the following facts leads to this conclusion: (1) the black/white ratio on the jury mirrored that of the venire; (2) the prosecutor adequately explained two strikes; (3) the prosecutor did not use all his strikes; (4) there were two blacks left on the jury. Although the existence of fewer than all or most of these circumstances might be insufficient to prevent or rebut an inference of intentional discrimination, see Flemming v. Kemp, 794 F.2d 1478, 1483 (11th Cir.1986) (“[Njothing in Batson compels the district court’s conclusion that constitutional guarantees are never abridged if all black jurors but one or two are struck because of their race,” the Court is mindful of Justice Holmes’s comment in a different context that “we cannot let the fagot be destroyed by taking up each item ... separately and breaking the stick.” Edwards v. Chile Copper Co., 270 U.S. 452, [455], 46 S.Ct. 345, 346, 70 L.Ed. 678 (1926). There is significance, perhaps determinative significance, in the coexistence of these facts.’ ”
Similarly, in Ex parte Demunn, 627 So.2d 1010 (Ala.1992), the Alabama Supreme Court affirmed this Court’s judgment on the authority of Huntley v. State, 627 So.2d 1013 (Ala.Cr.App.1992), and held that the record supported the inference that the State had not exercised any of its peremptory strikes in a racially discriminatory manner, even though the prosecutor could not recall the reason for striking three black persons from the venire. In Demunn, the trial court required the State to offer reasons for its peremptory strikes after the defendant presented the following evidence in support of his Batson objection:
“1) [T]hat the lawfully established jury ve-nire consisted of at least 64 people, of whom 8 (no more than 12.5%) were black; (2) that the prosecutor had, at least, 26 peremptory strikes; (3) that he used only 3 of those strikes to remove blacks from the venire; (4) that 5 blacks actually served on the jury; (5) that the racial composition of the jury that was ultimately empaneled was approximately 41% black and 59% white; and (6) that the petitioner had approximately 28.5% more blacks on his jury than were on the venire as a whole.”
627 So.2d at 1010.
However, in the present ease, the facts are insufficient to rebut or overcome the inference of intentional discrimination. In this ease, 12 of the 42 members of the jury venire were black (28.5%). The petit jury was comprised of only one black juror, so that the racial composition of the jury was 92% white and 8% black. Moreover, the prosecutor, who was allotted 15 peremptory strikes, used 11 of these strikes to remove blacks from the jury. These statistics, coupled with the prosecutor’s failure to offer a “clear, specific, and legitimate reason” for its strike of juror no. 48, “indicate that the State failed to meet its burden in rebutting the appellant’s prima facie case.
The judgment of the trial court is, therefore, reversed and this case remanded for a new trial.
REVERSED AND REMANDED.
All Judges concur.
MONTIEL, J., concurs specially with opinion.