867 P.2d 1175

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Russell WILSON, Defendant–Appellant.**

**No. 20805.**

Supreme Court of New Mexico.

Jan. 19, 1994.

Sammy J. Quintana, Chief Public Defender, Susan Gibbs, Asst. Appellate Defender, Santa Fe, for appellant.

Tom Udall, Atty. Gen., Joel K. Jacobsen, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

RANSOM, Chief Justice.

Russell Wilson was convicted of receiving stolen property under NMSA 1978, Section 30–16–11 (Cum Supp.1993), and of felony possession of stolen credit cards under NMSA 1978, Section 30–16–26 (Repl.Pamp. 1984). He appealed his convictions to the Court of Appeals, and, pursuant to NMSA 1978, Section 34–5–14(C) (Repl.Pamp.1990), that Court certified the case to us because it believed that *Alexander v. Delgado,* 84 N.M. 717, 718, 507 P.2d 778, 779 (1973), precluded it from questioning an applicable uniform jury instruction.

In *Delgado v. Alexander,* 84 N.M. 456, 460, 504 P.2d 1089, 1093 (Ct.App.1972), the Court of Appeals abolished the doctrine of "unavoidable accident" and directed that the relevant instruction no longer be used. On appeal, this Court considered "the propriety of that action *in light of the history* of the defense." *Alexander,* 84 N.M. at 718, 507 P.2d at 779 (emphasis added). "Unavoidable accident" was a defense that developed in the common law and had been approved by this Court prior to our adoption of the uniform jury instructions in 1966. Litigants had urged this Court to abolish the defense, but we declined to do so on several occasions. *See, e.g., Lucero v. Torres,* 67 N.M. 10, 16, 350 P.2d 1028, 1032 (1960) (refusing to follow California's abandonment of unavoidable accident defense). Considering the history of the defense, we held that the Court of Appeals had acted improperly "in overruling precedents of this [C]ourt which not only recognize the defense, but specifically decline to abolish it, and nullifying an instruction

which we have approved." *Alexander,* 84 N.M. at 719, 507 P.2d at 780. Thus, *Alexander* held that the Court of Appeals is bound by the precedents set by this Court. *Id.* at 718, 507 P.2d at 779.

In subsequent cases, this Court has relied on *Alexander* for the proposition that the Court of Appeals is bound by the uniform jury instructions. *See, e.g., Collins v. Michelbach,* 92 N.M. 366, 367, 588 P.2d 1041, 1042 (1979) (stating that Court of Appeals has "no authority to alter, modify or abolish" uniform jury instructions); *Esquibel v. State,* 91 N.M. 498, 500, 576 P.2d 1129, 1131 (1978) (stating that Court of Appeals "has no authority to set aside an instruction approved by the Supreme Court"). The Court of Appeals has acknowledged that it has no authority to question the validity of the uniform jury instructions because they are made "mandatory" when the Supreme Court adopts them through a general order. *See State v. Martin,* 90 N.M. 524, 528, 565 P.2d 1041, 1045 (Ct.App.), *cert. denied,* 90 N.M. 636, 567 P.2d 485 (1977).

The Supreme Court will amend, modify, or abolish uniform jury instructions when such instructions are erroneous. *Collins,* 92 N.M. at 367, 588 P.2d at 1042. Similarly, district courts have the authority to disregard uniform jury instructions in cases in which "under the facts or circumstances of the particular case the published [instruction] is erroneous or otherwise improper, and the trial court so finds and states of record its reasons." SCRA 1986, 1–051(D) (Repl. Pamp.1992). We hold today that the Court of Appeals is *not* precluded from considering error in jury instructions, but is precluded only from overruling those instructions that have been considered by this Court in actual cases and controversies that are controlling precedent.

The *Alexander* doctrine is based on the principle that "it is not considered good form for a lower court to reverse a superior one. Such actions are unsettling in the law which we ought to strive to make certain, and result in a disorderly judicial process." 84

N.M. at 718, 507 P.2d at 779. If there exists precedent from this Court that specifically addresses the validity of a uniform jury instruction, the Court of Appeals may not overrule that precedent nor alter or reject that instruction. If, however, the uniform jury instruction has not been challenged, we see no reason why the Court of Appeals should be precluded from questioning the validity of the instruction just as it would any other precept not yet passed on by the Supreme Court. Although this Court's adoption of uniform jury instructions proposed by standing committees of the Court establishes a presumption that the instructions are correct statements of law, that fact alone is not sufficient precedent to tie the hands of the Court of Appeals.

Therefore, we hold that the Court of Appeals has authority to question uniform jury instructions in cases in which the instruction has not been challenged previously and to amend, modify, or abolish the instruction if it is erroneous. Further, this Court encourages the Court of Appeals to express its rationale for any reservations it might harbor over Supreme Court precedent. The Court of Appeals, nonetheless, remains bound by Supreme Court precedent and thus does not have authority to alter an instruction that has been reviewed and ruled upon by this Court. To the extent that *Collins, Esquibel, Martin*, and similar cases are inconsistent with this opinion, they are hereby overruled.

We adopt and append the proposed disposition of the Court of Appeals and remand this case to the district court for entry of judgment and for resentencing for petty misdemeanor possession of stolen credit cards. Because it appears that Wilson will have at most two months to serve following resentencing on the petty misdemeanor (if he is in fact given the maximum sentence of six months), his Petition for Emergency Release on other grounds is denied.

IT IS SO ORDERED.

BACA, MONTGOMERY, FRANCHINI and FROST, JJ., concur.

ATTACHMENT

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

State of New Mexico, Plaintiff–Appellee,

vs.

Russell Wilson, Defendant–Appellant.

No. 13,235

Appeal from the District Court of Taos County Joseph E. Caldwell, District Judge.

Tom Udall, Attorney General

Joel K. Jacobsen, Assistant Attorney General Santa Fe, New Mexico Attorneys for Plaintiff–Appellee

Susan Gibbs Santa Fe, New Mexico Attorney for Defendant– Appellant

*CERTIFICATION TO THE SUPREME COURT*

(Aug. 10, 1992)

PICKARD, Judge.

Defendant appeals his convictions for receiving stolen property and possessing stolen credit cards, contending that (1) his right to counsel was violated, (2) the trial court erred in refusing to suppress evidence or to hold a hearing on the confidential informant's identity, (3) the laws prohibiting possession of stolen credit cards are void for vagueness, and (4) the prosecutor used peremptory challenges in a discriminatory manner. Cumulative error was raised in the docketing statement, but was not briefed, and it is deemed abandoned. *See State v. Fish*, 102 N.M. 775, 777, 701 P.2d 374, 376 (Ct.App.1985). We certify this case to the supreme court, but explain in this certification why we would affirm on issues (1), (2), and (4) and reverse on a variation of issue (3).

## I. VIOLATION OF THE RIGHT TO COUNSEL

Attorney Sam B. Sanchez was appointed to represent defendant on July 17, 1990. The grand jury met on August 2, 1990. On August 29, 1990, Sanchez moved to withdraw as defendant's lawyer based on a "legal conflict

of interest." The motion was granted, and new counsel was appointed.

Defendant moved to dismiss the indictment or to suppress his grand jury testimony, arguing that he had no lawyer at the grand jury. When the trial court observed that Sanchez was counsel of record on August 2, defendant changed his claim from total deprivation of counsel to ineffective assistance of counsel, based on Sanchez's representation of a codefendant and his failure to appear or make other arrangements for this defendant at the grand jury, apparently because Sanchez was then on vacation. Noting that facts surrounding Sanchez's conflict and failure to appear or find other counsel were not in evidence, the trial court denied the motion. Defendant then moved for the court to take judicial notice of court files in other causes involving the codefendant in order to establish Sanchez's conflict and ineffective assistance. That motion was also denied, with leave to refile. Defendant did not thereafter renew this issue. At trial, the prosecutor briefly referred to defendant's grand jury testimony without objection, and defense counsel established that defendant's grand jury testimony and trial testimony were consistent.

■ Defendant argues in his brief in chief that he was entitled to have an attorney present at the grand jury and that he was improperly deprived of the opportunity to receive advice of counsel because of his indigence. We do not address the merits of this claim because it was abandoned below when defendant changed his claim to ineffective assistance of counsel. *Cf. State v. Shafer,* 102 N.M. 629, 635, 698 P.2d 902, 908 (Ct.App. 1985) (error may not be predicated on fact that defense counsel withdrew line of questioning, due to objection, in cross-examination, because defendants abandoned any further attempt to cross-examine along those lines). The issue raised below, ineffective assistance of counsel, is not squarely raised on appeal, nor is there a record of evidence to support it. *See State v. Powers,* 111 N.M. 10, 12, 800 P.2d 1067, 1069 (Ct.App.1990) (insufficient factual basis precludes appellate review). It was defendant's burden to make

a sufficient record for review on appeal. *See State v. Jim,* 107 N.M. 779, 780, 765 P.2d 195, 196 (Ct.App.1988). Moreover, by failing to object to the prosecutor's reference to the grand jury testimony at trial, defendant waived any claim of prejudice arising from the use of that testimony, which was exculpatory in any case. *See State v. Lucero,* 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct.App. 1986) (timely objection necessary to preserve issue for appeal); *State v. Wright,* 84 N.M. 3, 5, 498 P.2d 695, 697 (Ct.App.1972) (error reversible only if prejudicial). Because defendant waived or abandoned his claims concerning total deprivation of counsel made below and does not properly pursue his claim of ineffective assistance on appeal, we would affirm his convictions on this point.

## II. SUPPRESSION AND CONFIDENTIAL INFORMANT IDENTITY

### A. Pretextual Stop

■ Defendant argues that the trial court erred in finding that the vehicle stop was not pretextual. Defendant has standing to raise this claim. *See State v. Creech,* 111 N.M. 490, 492, 806 P.2d 1080, 1082 (Ct.App.1991). The question on appeal is whether the evidence at the suppression hearing was sufficient to justify the court's determination. *State v. Apodaca,* 112 N.M. 302, 304, 814 P.2d 1030, 1032 (Ct.App.1991). The evidence was that Deputy Ted Ulibarri stopped six to eight vehicles a month for seat belt violations, and that he would not have stopped the car if there had been no seat belt violation. This evidence was sufficient to sustain the trial court's ruling. *See id.*

### B. Confidential Informant

■ Defendant moved for disclosure of the informant pursuant to SCRA 1986, 11–510, and on appeal he attacks the trial court's failure to hold a hearing on the matter. Defendant relies on Rule of Evidence 11–510(C)(2), but that subsection of the rule, by its terms, applies to "[t]estimony on merits." Rule 11–510(C)(3) applies to "[l]egality of obtaining evidence," which is at issue here. Under Rule 11–510(C)(3), the court need not hold an in camera hearing unless "information from an informer is relied upon" by the

state to justify the stop. Since the state relied upon the seat belt violations to justify the stop, the language of Rule 11–510(C)(3) did not come into play, and the court could properly refuse to hold an in camera hearing.

### C. Probable Cause for Arrest

■ Defendant argues that the police lacked probable cause to arrest him for being a party to Harvey Abeyta's crime of driving with a suspended license and that all fruits of his arrest must be suppressed. Defendant admits that on August 22, 1990, he pleaded guilty to the misdemeanor charges of being a party to Abeyta's crime of driving with a suspended license and failing to use a seatbelt. Pleading guilty to the charge was an admission that the charge was proved beyond a reasonable doubt. *A fortiori* there was probable cause.

### D. Inventory Search

■ Defendant argues that the trial court erred in upholding the search of closed containers in the vehicle absent proof of established inventory search procedures. Defendant also contends that no reasonable nexus existed between the search of the containers and defendant's arrest. The issue on appeal is whether the evidence at the suppression hearing was sufficient to justify the court's ruling. *See Apodaca,* 112 N.M. at 304, 814 P.2d at 1032. Inventory search procedures must be standardized, but need not be written. *See State v. Boswell,* 111 N.M. 240, 241–42, 804 P.2d 1059, 1060–61 (1991). There was testimony here that it is standard procedure and officers are trained to open all unlocked containers as part of the inventory. As to the requirement of "nexus," *Boswell* states that "[t]he reasonable nexus between the arrest and seizure need not be based on probable cause, but can be based on 'all the facts and circumstances of [the] case in light of [established fourth amendment] principles.'" *Id.* at 243, 804 P.2d at 1062 (quoting *South Dakota v. Opperman,* 428 U.S. 364, 375, 96 S.Ct. 3092, 3100, 49 L.Ed.2d 1000 (1976)). Here, the nexus was that both occupants of the car were under arrest, the police were taking custody of the car, and the

police inventoried it for safekeeping of the contents.

### E. Postarrest Statement

■ Defendant attacks the admission of his postarrest statement of ownership of the jacket and jewelry box, based on the alleged impropriety of the officer's remark that he was going to have to impound the items until someone claimed them. Defendant argued below that the officer's remark was similar to the remarks made in *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), the famous "Christian burial" case. Clearly the circumstances of this case and the remark made by the officer bear no resemblance to the speech made in *Brewer* or to the circumstances present in that case. On appeal, defendant argues that the officer's remark was the "functional equivalent of interrogation" under *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). As the state points out, however, the inquiry is whether Deputy Ulibarri's statement was one which he should have known to be reasonably likely to elicit an incriminating response from defendant. *See State v. Edwards,* 97 N.M. 141, 144, 637 P.2d 572, 575 (Ct.App.1981). The single remark about unclaimed property did not amount to the functional equivalent of interrogation. *See id.*

## III. VAGUENESS

■ Defendant argues that the credit card statutes at issue are void for vagueness. The state contends that defendant lacks standing to make this claim. We disagree. Defendant's standing is based on the fact that he was charged and convicted under the statute carrying the greater penalty. *See State v. Vickery,* 85 N.M. 389, 393, 512 P.2d 962, 966 (Ct.App.1973).

■ Defendant argues that the two statutes, which are virtually indistinguishable, are impermissibly vague because they do not give notice of the proscribed conduct and permit arbitrary enforcement. The only cases defendant cites are *Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), and *State v. Riddall,* 112 N.M. 78, 811 P.2d 576 (Ct.App.1991). The statutes at

issue clearly define what conduct is proscribed—that it is a crime to knowingly possess a stolen credit card with the intent to use it, sell it, or transfer it to another person. Defendant was clearly on notice that his conduct was prohibited.

As to the second prong of defendant's argument, that of discriminatory enforcement, the cases defendant relies on focus on the actions of the police. The vice in *Kolender* was that police could arrest or not arrest at will and could discriminate against disfavored groups by harassing otherwise innocent people on the street. That vice is not present here because all people who knowingly possess stolen credit cards with the requisite intent are subject to arrest.

A more complicated issue is presented by the possibility of discriminatory charging by the prosecutor. In this connection, defendant has not demonstrated that discriminatory enforcement actually occurred. This issue has been addressed in our cases as a matter of equal protection. *See State v. Chavez*, 77 N.M. 79, 82, 419 P.2d 456, 458 (1966); *Incorporated County of Los Alamos v. Montoya*, 108 N.M. 361, 367, 772 P.2d 891, 897 (Ct.App. 1989). Defendant does not cite these cases or argue the issue discussed in *Montoya* of whether *Montoya*'s interpretation of *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979), controls. As *Montoya* indicates, this is a complicated issue and, therefore, we are reluctant to address it without its having been fully briefed by the parties. *See Watson Truck & Supply Co. v. Males*, 111 N.M. 57, 60–61, 801 P.2d 639, 642–43 (1990).

However, we cannot help but notice the serious problem defendant brings to our attention. We do not believe there is an insurmountable problem in the statutes. We believe that by appropriate construction and adequate jury instructions, meaningful distinctions would be apparent between NMSA 1978, Sections 30–16–26 and –27 (Repl. Pamp.1984). Specifically, we note that Section 30–16–26 appears to require actual knowledge that the card was wrongfully taken at the time it was acquired, whereas

Section 30–16–27 applies when the possessor of the card merely has reason to know of the stolen, mislaid, or mistakenly delivered nature of the card, which knowledge could be gained at any time during the possession. Further, Section 30–16–26 appears to proscribe acquisition with the requisite intent, whereas one can legitimately acquire a stolen credit card under Section 30–16–27 and if one develops the requisite intent later one would not be guilty until that time.

However, defendant's jury was instructed in accordance with SCRA 1986, 14–1681 (the instruction under Section 30–16–26) and 14–1682 (the instruction under Section 30–16–27), with Uniform Jury Instruction 14–1682 being submitted as a lesser offense. The jury found defendant guilty of the greater offense, and he was sentenced as a felon under Section 30–16–26.

Examination of the jury instructions given to the jury for both the felony and the misdemeanor shows no appreciable difference between the offenses. For the felony, the jury was instructed on the following elements:

1. The Defendant had in his possession credit cards issued to [another];

2. The Defendant knew or had reason to know that the credit cards had been stolen;

3. The Defendant intended to use the credit cards[.]

For the petty misdemeanor, the jury was instructed on the following elements:

1. The credit cards had been stolen;

2. The Defendant had in his possession credit cards issued to [another];

3. The Defendant knew or had reason to know that the credit cards had been stolen;

4. The Defendant retained possession with the intent to use the credit cards[.]

As can be seen, the felony jury instruction did not include any element not already contained in the petty misdemeanor instruction, whereas we have noted our belief that elements of actual knowledge and the timing of the requisite intent appear to be essential elements required by the felony statute. When jury instructions omit essential elements or are so confusing and incomprehen-

sible that a court cannot be certain that the jury found the essential elements under the facts of the case, fundamental error occurs. *State v. Orosco*, 113 N.M. 780, 833 P.2d 1146 (1992); *State v. Ortega*, 112 N.M. 554, 566, 817 P.2d 1196, 1208 (1991); *State v. Osborne*, 111 N.M. 654, 662, 808 P.2d 624, 632 (1991); *State v. DeSantos*, 89 N.M. 458, 462, 553 P.2d 1265, 1269 (1976).

We are precluded from declaring such an error in this case, however, because of the doctrine in *Alexander v. Delgado*, 84 N.M. 717, 718, 507 P.2d 778, 779 (1973). We are confident, though, that the supreme court, upon review of the applicable jury instructions, would agree that there is not a meaningful distinction between them as applied to this case and that both instructions, in fact, instructed the jury only on the petty misdemeanor offense.

If this court were permitted the authority to question uniform jury instructions, we would point out the omissions that we have discussed and reverse defendant's conviction for the felony offense and remand for resentencing for a petty misdemeanor. Because we do not have that authority, we certify this case to the supreme court.

## IV. BATSON ISSUE

Defendant maintains on appeal that the prosecutor used peremptory challenges impermissibly to remove Hispanic males from the jury. We disagree. Hispanic men, other than the three men at issue, were seated on the jury. Indeed, the record reflects that with one exception, the entire jury panel was of Hispanic origin.

The prosecutor offered racially neutral explanations for his challenge to the jurors at issue. *See State v. Goode*, 107 N.M. 298, 301, 756 P.2d 578, 581 (Ct.App.1988). In deciding whether the prosecutor's explanation meets this test, the trial court is to consider the treatment of members of the excluded group versus other potential jurors, the extent of voir dire of the excluded jurors, whether the explanation is related to the particular case, and whether a past pattern of challenges against members of a particular

racial group exists. *See id.* at 302–03, 756 P.2d at 582–83.

In this case, the prosecutor's explanations were racially neutral, and they were related to the case at bar. There was no evidence of a past pattern of questionable challenges on the part of the prosecution. Rather, defendant's contention appears to be that other potential jurors could have been subject to similar challenges. We disagree. Regarding juror Martinez, the explanation that he was arrested by the officers involved in this case after a high-speed chase was a sufficient neutral reason to exclude him. A similar reason was given for juror Cordova. Defendant does not point out any other jurors subject to similar challenges. The third juror about whom defendant complains was excluded because he knew defendant, defendant's girlfriend, and another person involved with the charges at issue here. While defendant points to other jurors who knew him and his girlfriend, he does not point to other jurors subject to the challenge of knowing all three people. Defendant's contention about other jurors, therefore, has no factual basis in the record in this case. Therefore, under all of the circumstances the court is supposed to consider pursuant to *Goode*, there was no error here.

## V. CONCLUSION

For the foregoing reasons, we would affirm the convictions for receiving stolen property, but would reverse the conviction on the credit card offense and remand for entry of a new judgment and sentence convicting and sentencing defendant for the misdemeanor on this offense. Because applicable precedent precludes us from doing this, we certify this case to the supreme court.

IT IS SO ORDERED.

DONNELLY and MINZNER, JJ., concur.